IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Senior Judge Wiley Y. Daniel**

Civil Action No.  12-cv-00335-WYD

JONATHAN HEINY,

      Plaintiff,

v.

MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY,

      Defendant.

---

## ORDER

---

      THIS MATTER is before the Court on review of the Commissioner's decision that denied Plaintiff's Application for supplemental security income benefits under Title XVI of the Social Security Act ["the Act"].  For the reasons stated below, this case is reversed and remanded to the Commissioner for further fact finding.

I.    <u>BACKGROUND</u>

      Plaintiff was 19 years old as of his alleged onset date and 22 years old at the time of the ALJ's decision.  (Transcript ["Tr."] 19, 115, 137.)  He was in special education and completed the eleventh grade.  (*Id.* 30-31).  Plaintiff subsequently earned a general equivalency diploma through a probation program. (*Id.* 30-31.) He worked various part-time jobs, including road flagger, day laborer, and retail sales associate.  (*Id.* 51-149.)

      Plaintiff protectively filed an application for supplemental security income in July 2008, alleging disability beginning June 1, 2007.  (Tr. 12, 55, 115-19, 137.)  Plaintiff's

application proceeded to a hearing before an Administrative Law Judge ["ALJ"].  (*Id.* 26-54; *see also* 55-114.)  The ALJ issued an unfavorable decision.  (*Id.* 9-25.)

More specifically, at the first step of the sequential evaluation required by law the ALJ found that Plaintiff had not engaged in substantial gainful activity since his application date in July 2008.  (Tr. 14.)  At step two, the ALJ found that Plaintiff had severe impairments of bipolar disorder, history of learning disorder NOS [not otherwise specified], and history of ADHD.  (*Id.* 14-15.)  At step three, the ALJ found Plaintiff's condition did not meet or medically equal the requirements of any impairment in the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, app. 1.  (*Id.* 15-16.)

Next, the ALJ found that Plaintiff retained the residual functional capacity ["RFC"] to perform medium exertional work as defined in 20 C.F.R. § 416.967(c), except that Plaintiff could not be required to understand, remember, and carry out more than simple instructions, have more than superficial interaction with coworkers; interact with the public, work with money or do math problems, or be more than rarely exposed to excessive dust, fumes, or gases.  (Tr. 16-19.)  At step four, the ALJ found that Plaintiff did not have any past relevant work, *i.e.*, "the claimant explained that he has been fired from many jobs for a variety of reasons, and his earnings record shows that in fact he has not yet worked to a level of substantial gainful activity."  (*Id.* 16, 19.)

Finally, at the fifth step, the ALJ relied upon vocational expert testimony to find that Plaintiff could perform work existing in significant numbers in the national economy.  (Tr. 20.)  Accordingly, the ALJ found Plaintiff was not under a disability, as defined in the Social Security Act.  (*Id.*)

Plaintiff then requested review by the Appeals Council. (Tr. 6-8.) In connection with this review, he submitted additional evidence to the Council. This consisted of two forms both completed in late 2011 – a "Mental Impairment Questionnaire" completed by psychologist Elizabeth George, Ph.D. (*id.* 340-49) and a "Mental Health Questionnaire" completed by psychiatrist Christopher Schneck, M.D. (*Id.* 346-49.) The Appeals Council indicated that it considered the opinions of Drs. George and Schneck, but that they did not provide a basis for changing the ALJ's decision. (*Id.* 1-2, 4-5.) Accordingly, the Appeals Council denied Plaintiff's request for review (*id.* 1-3), thereby making the ALJ's decision the Commissioner's final administrative decision for purposes of judicial review. *See* 20 C.F.R. § 416.1481. This appeal followed.

Plaintiff alleges that the ALJ did not properly evaluate the opinions of treating source Dr. Jill McNaul and failed to ask a complete hypothetical of the vocational expert. He also asserts that the Appeals Council failed to weigh or consider new medical evidence.

II.    ANALYSIS

    A.    Standard of Review

A Court's review of the determination that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standard and whether the decision is supported by substantial evidence. *Hamilton v. Sec. of Health and Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992). Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion. *Brown v. Sullivan*, 912 F.2d 1194, 1196 (10th Cir. 1990). "It requires more than a scintilla of evidence but less than a preponderance of the evidence." *Gossett v. Bowen*, 862 F.2d 802, 804 (10th Cir. 1988).

"Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). Further, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from substantial evidence." *Thompson v. Sullivan*,  987 F.2d 1482, 1487 (10th Cir. 1993).

B.    Whether a Remand is Appropriate

Plaintiff argues that the ALJ improperly evaluated the opinions from his treating source, psychiatrist Dr. Jill McNaul.  Dr. McNaul opined that Plaintiff had mild to no restrictions in activities of daily living, moderate difficulties in maintaining social functioning and moderate to marked deficiencies in concentration, persistence or pace.  (Tr. 19, 338.) She also stated that Plaintiff had three episodes of decompensation in the previous twelve months that each lasted at least two weeks.  (*Id.*)  The ALJ stated that he gave her opinions "less weight".  (*Id.* 19.)

I agree with Plaintiff that the ALJ did not properly evaluate Dr. McNaul's opinions. First, the ALJ failed to apply the two-step inquiry required when evaluating a treating physician's opinions, "each step of which is analytically distinct." *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011).  The initial determination the ALJ must make is whether a treating physician's medical opinion is "conclusive, i.e., is to be accorded 'controlling weight,' on the matter to which it relates." *Id.*  "Such an opinion must be given controlling weight if it is well-supported by medically acceptable clinical or laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record." *Id.*

Here, the ALJ never considered whether Dr. McNaul's opinions were entitled to controlling weight.  I find from a review of Dr. McNaul's records that she made medical

-4-

findings that supported her opinions, both in the Mental Impairment Questionnaire that she completed as well as in her treatment notes.  (Tr. 336-337, 222-29, 285-326.)    Medical findings cannot be rejected in the absence of conflicting evidence.  *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994).  These findings are based on medically acceptable clinical or laboratory diagnostic techniques since they were based on observed signs and symptoms during her treatment of Plaintiff.  *Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004).  Even if a treating source's opinions are not supported in the record, this does not allow an ALJ to simply reject the opinion.  *Id.* (citing SSR 96–2p, 1996 WL 374188, at \*4).  It still must be given deference at the second step of the inquiry.  *Id.*

At the second step, the ALJ must make clear how much weight the opinion is being given (including whether it is being rejected outright) and give good reasons, tied to the factors specified in the cited regulations for this particular purpose, for the weight assigned." *Robinson*, 366 F.3d at 1083.  "If this is not done, a remand is required."  *Id.*  Here again, I find that the ALJ failed in this analysis, as it is unclear what actual weight, if any, the ALJ gave to Dr. McNaul's opinions and findings.  While he stated that he gave her opinions "less weight", this does not allow me to meaningfully review the ALJ's determination as to Dr. McNaul, as I am unable to determine the weight, if any, he gave to her opinions. Further, "'[w]hen a treating [source's] opinion is inconsistent with other medical evidence, the ALJ's task is to examine the other [sources'] reports to see if they outweigh the treating [source's] report, not the other way around.'"  *Valdez v. Barnhart*, No. 01-1531, 2003 WL 366751 at \*2 (10th Cir. Feb. 20, 2003) (unpublished) (quoting *Goatcher v. U.S. Dep't of*

*Health & Human Servs.*, 52 F.3d 288, 290 (10th Cir. 1995)).[1]  Here, it appears that the ALJ

did the reverse–he weighed the treating source's report to see if it outweighed the other

sources' report.

I also find that the ALJ's reasons for giving less weight to Dr. McNaul's opinions are

not supported by substantial evidence.  The ALJ stated that "[e]ven though the opinion of

the treating physician is generally due a measure of deference, her conclusion that the

claimant has moderate to marked deficiencies in concentration, persistence, or pace is not

reflected in her treatment notes or supported in the record, and her statement that the

claimant has experienced three episodes of decompensation each lasting two weeks is not

supported in the record."  (Tr. 19.)  While this statement is true so far as it goes, Dr. McNaul

did not address Plaintiff's functional limitations in her treatment notes.  Accordingly, her

opinion as to Plaintiff's functional limitations is not inconsistent with her treatment notes.

The ALJ fails to recognize that there is a distinction between a doctor's notes for purposes

of treatment and the doctor's opinions on the claimant's ability to work.  *See Brownawell v.

Comm'r of Soc. Security*, 554 F.3d 352, 356 (3rd Cir. 2008); *Jones v. Astrue*, No. 11 C 4827,

2012 WL 2018534, at *9 (N.D. Ill. June 5, 2012) (unpublished); *Cerrone v. Astrue*, Case No.

10-114, 2010 WL 2697923, at *14 (W.D. Pa. 2010) (unpublished).  The treatment notes

describe Plaintiff's condition at the time of the appointment while the Mental

Impairment Questionnaire describes Dr. McNaul's assessment of Plaintiff's ability to function

in a work setting.  *See Brownawell*, 554 F.3d at 356.

---

[1]  Citation to this and other unpublished opinions in this Order are made because I find that they have persuasive value and will assist in the disposition of this case.  *See* 10th Cir. R. 32.1(A).

Dr. McNaul did, however, in her treatment notes make findings concerning Plaintiff's appearance, speech, motor activity, thoughts, emotional state and cognitive functioning during her appointments, and made other observations about Plaintiff's mental status. She also changed Plaintiff's medication to help with Plaintiff's attention. (Tr. 322.) Contrary to the ALJ's decision, these findings are not contrary to or inconsistent with Dr. McNaul's opinions in the Mental Impairment Questionnaire. She also assessed Plaintiff's GAF score at 55, which is indicative of "'[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers).'" *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1162 n. 1 (10th Cir. 2012) (quotation omitted). Moreover, she noted during her treatment of Plaintiff that his functioning worsened at times. This certainly seems consistent with her findings of moderate to marked impairments.

Dr. McNaul's opinions were also supported by other treating and non-treating physicians. Similar assessments were listed in the post-hearing opinions of Dr. Elizabeth George, psychiatrist, and Dr. Christopher Schneck. (Tr. 341-44, 346-49). Since these opinions were considered by the Appeals Council, they are part of the record I consider when evaluating whether the ALJ's decision is supported by substantial evidence. *Chambers v. Barnhart*, 389 F.3d 1139 (10th Cir. 2004). Similar conclusions were also reached by consultative examiner Dr. Kutz and social security physician Dr. Ryan who performed a "records only" review–a difference being that they opined to a moderate impairment in concentration, persistence and pace versus Dr. McNaul's opinion of a moderate to marked impairment. (Tr. 238-243, 193-209.)

I also find that the ALJ's statements that the three episodes of decompensation were not supported in Dr. McNaul's records are an improper lay judgment or speculation by the ALJ. *See Langley v. Barnhart*, 373 F.3d 1116, 1121 (10th Cir. 2004) ("In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and *not due to his or her own credibility judgments, speculation, or lay opinion.*"") (emphasis in original) (quotation omitted).   Under the regulations, "[e]pisodes of decompensation are exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning" which "may be demonstrated by an exacerbation in symptoms or signs that would ordinarily require increased treatment or a less stressful situation (or a combination of the two)."   20 C.F.R. pt. 404, subpt. P, appx. 1, § 12.00(C)(4).   "Episodes of decompensation may be inferred from medical records showing significant alteration in medication; or documentation of the need for a more structured psychological support system (e.g., hospitalizations. . .) or other relevant information in the record about the existence, severity, and duration of the episode." *Id.*[2]

In this case. Dr. McNaul's records showed that Plaintiff's functioning worsened at times, such that he arguably would have had an exacerbation in symptoms or signs. Further, Dr. McNaul made alternations in medication when Plaintiff's condition was worsening, and made recommendations of more structure and restarting therapy.  (Tr. 306-

---

[2]  While the ALJ appeared to assume that hospitalization is required for a finding of decompensation, this is obviously not the case.

07, 311, 313, 317, 336.)  This could support findings of decompensation.[3]  At the very least,

if the ALJ felt Dr. McNaul's records were unclear on this issue, he was required under the

regulations in place to contact Dr. McNaul for clarification on this issue.  *McGoffin v.*

*Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002); *Hawkins v. Chater*, 113 F.3d 1162, 1169

(10th Cir. 1997).  Accordingly, this finding is also not supported by substantial evidence.

Finally, Dr. McNaul opined that Plaintiff would be likely to miss more than four days

of work per month.  This is significant since the vocational expert opined that employers

generally do not tolerate more than two missed days per month.  (Tr. 53.)  The ALJ rejected

this opinion on the basis that Dr. McNaul "may have based that opinion on the claimant's

history of terminations due to too many absences."  Again, this is pure speculation and/or

a lay judgment.  An ALJ is not entitled to reject a doctor's opinions without adequate

justification or to substitute his own medical judgment for that of mental health professionals.

*Winfrey v. Chater*, 92 F.3d 1017, 1021-22 (10th Cir. 1996).  Thus, this finding is also not

supported by substantial evidence.  Dr. McNaul's opinion on this issue is significant as it

may impact Plaintiff's ability to hold a job, and was not addressed by the other physicians.

Since the ALJ did not follow the proper procedure in connection with weighing

treating physician Dr. McNaul's opinion and did not give valid reasons for rejecting her

findings, this case must be remanded for further fact finding.  *Washington v. Shalala*, 37

---

[3]  Plaintiff's own testimony also provided support for these opinions, as he testified that he has manic episodes that affect his ability to function that last from two to five days at a time (Tr. 39), and that when he cycles into the depressive mode, he barely functions for periods of three to four days.  (*Id.* 44.)  The fact that Plaintiff was not depressed on the day he saw Dr. Kutz for a consultative examination (*id.* 18) does not allow the ALJ to reject this testimony or the medical findings in the record regarding Plaintiff's mental impairments.  *See Morrison v. Astrue*, No. C12-3005-LTS, 2012 WL 5964521, *17 (N.D. Iowa Nov. 28, 2012) ("symptom-free periods are often inherently characteristic of [mental] impairments") (unpublished).

F.3d 1437, 1439 (10th Cir. 1994) ("'Failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal.'") (quotation omitted).  Outright reversal and an award of benefits as suggested by Plaintiff is improper since there is a need for additional fact finding.  *Sorenson v. Bowen*, 888 F.2d 706, 713 (10th Cir. 1989).

The fact that Dr. McNaul's opinion must be reweighed will also require the ALJ to reweigh the other medical evidence, including the opinions of the state agency physician. I note, however, for purposes of the remand, that the ALJ gave substantial weight to state agency physician Dr. Ryan's opinion on the basis that "it is supported by the objective findings of record and the evidence as a whole." (Tr. 18.)  Yet her opinion is not consistent with the objective findings of record from treating physician Dr. McNaul.  They also are not consistent with the findings of consultative examiner Dr. Kutz, who the ALJ purportedly gave substantial weight to, since he found that Plaintiff had moderate to marked impairments in social functioning.  On remand the ALJ must keep in mind that reliance on an agency physician's opinion is reasonable only insofar as that opinion is supported by evidence in the case record.  *Lee v. Barnhart*, 117 F. App'x 674, 678 (10th Cir. 2004) (unpublished) (citing SSR 96-6P, 1996 WL 374180, at *2).  In other words, the agency physician's opinion must itself "find adequate support in the medical evidence."  *Id.*

In light of the decision to remand, Plaintiff's argument that the case should be remanded because the Appeals Council failed to consider the new evidence submitted to it is moot.  I noted previously, however, that this evidence provided support for Dr. McNaul's opinions and must be properly considered on remand.

Finally, in light of the remand for the reweighing of the medical evidence, the ALJ will also obviously need to reconsider the hypothetical question.  On remand, the ALJ must ensure that the hypothetical question relates with precision all of Plaintiff's impairments. *Gay v. Sullivan*, 986 F.2d 1336, 1340 (10th Cir. 1993).

III.    <u>CONCLUSION</u>

Based upon the foregoing, I find that the ALJ erred in not following the treating physician rule.  In light of this, the medical evidence must be reweighed on remand. Accordingly, it is

ORDERED that this case is **REVERSED AND REMANDED** to the Commissioner for further fact finding as directed in this Order pursuant to sentence four in 42 U.S.C. § 405(g).

Dated:  March 25, 2013

BY THE COURT:

s/ Wiley Y. Daniel
Wiley Y. Daniel
Senior United States District Judge

-11-